Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| SUSAN ROCHELLE GREGORY, ) | Case No. 18-bk-50243 |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| ) | |
| MARVETTA JILL MEADOWS, as ) | |
| ADMINISTRATRIX OF THE ESTATE ) | |
| OF M.M., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. Proc. No. 19-ap-5002 |
| ) | |
| SUSAN ROCHELLE GREGORY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Marvetta Jill Meadows, as Administratrix of the Estate of M.M. ("Ms. Meadows"), filed this five-count adversary complaint against Susan Rochelle Gregory (the 'Debtor") to deny entry of discharge pursuant to 11 U.S.C. § 727(a)(2)(A), (a)(3), (a)(4)(A), (a)(5), and (a)(12). The Debtor filed a motion to dismiss, or in the alternative, a motion for summary judgment, seeking dismissal of all counts of the complaint. Ms. Meadows subsequently requested entry of summary judgment on Counts I and II, each of which seeks to deny entry of discharge based on the Debtor's alleged failure to list certain legal claims on the schedules accompanying her bankruptcy petition.

For the reasons stated herein, the court will dismiss Counts II, III, IV, and V of the adversary complaint. The court will deny entry of summary judgment on Count I because

1

resolution of Count I would require the court to weigh the evidence in contravention of the standard of review for a summary judgment motion.

## I. STANDARD OF REVIEW[1]

Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment, but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A fact is not "genuinely disputed" unless the factual conflict between the parties requires a trial of the case for resolution. *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir. 1996) ("If there is any evidence in the record from which a jury could draw a reasonable inference in favor of the non-moving party on a material fact, this Court will find summary judgment is improper.").

---

[1] Because the court is considering matters outside the pleadings in its adjudication, it is employing the standards for adjudicating a motion for summary judgment and not the standards for adjudicating a motion to dismiss. Fed. R. Civ. P. 12(d), Fed. R. Bankr. P. 7012. When a party filing a motion to dismiss also captions its motion as, in the alternative, one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur and the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

## II. BACKGROUND

Before filing her Chapter 7 bankruptcy petition, the Debtor operated Happy Jack's Family Daycare as a sole proprietorship out of her home. As a licensed daycare operator, the Debtor was required to maintain proper insurance for her business. Before December 7, 2015, as asserted by the Debtor, she met with Michael Richmond and Richmond Insurance Center, Inc., (collectively "Richmond"), as an agent for Allstate Insurance Company ("Allstate"), to discuss her business liability insurance. Richmond allegedly made statements or undertook actions that led the Debtor to believe that she had proper insurance coverage. Unknown to the Debtor, her then-existing homeowner's policy excluded liability coverage for her daycare business.

In 2015, Ms. Meadows retained the Debtor's daycare services to care for her infant son, M.M. When Ms. Meadows dropped M.M. off on the morning of December 7, 2015, she informed the Debtor that M.M. was rolling from his back to his stomach but was not yet able to roll from his stomach to his back. That afternoon, the Debtor left her daycare business to pick up her own children from school, leaving another worker to care for the twelve children at her home. Sometime between 1:30 p.m. and 3:45 p.m., M.M. rolled onto his stomach and ultimately died from asphyxiation or other related causes.

On December 16, 2015, Ms. Meadows's attorney prepared a document entitled, "Notice to Preserve Evidence" that was hand delivered to the Debtor at her residence. Among other items, Ms. Meadows requested that the Debtor preserve M.M.'s bed, items placed in the bed, monitoring equipment, and certain business records. Ms. Meadows's attorney also instructed the Debtor to provide a copy of the Notice to her insurance provider. The next day, the Debtor stated that she presented the Notice to Preserve Evidence to her insurance agent, Richmond, who allegedly informed her that there was nothing to do until Ms. Meadows's attorney filed a lawsuit.

Following M.M.'s death, the Debtor's daycare facility was closed for about four months. While the facility was closed, and for about two months following its reopening in April 2016, the Debtor preserved M.M.'s playpen. Thereafter, however, the Debtor discarded M.M.'s playpen in an effort to comply with West Virginia regulations requiring that her playpens be of a newer model number, and because she had not heard anything further from Ms. Meadows's attorney. Subsequently, the Debtor received a phone call from an attorney requesting a copy of the insurance policy that she had in place at the time of M.M.'s death. Following that request, the Debtor allegedly contacted Richmond, who told her to contact Allstate's claims department, where she

spoke to a claims representative in a recorded conversation. Thereafter, Allstate retained an attorney to represent the Debtor.

Allstate informed the Debtor that she was not covered for losses associated with M.M.,'s death because she had not obtained the proper business liability insurance. Notwithstanding its assertion that the Debtor lacked proper coverage, Allstate retroactively amended the Debtor's policy to include $100,000 in coverage and offered to pay that amount to Ms. Meadows. On November 22, 2017, Ms. Meadows made her own settlement demand, stating, among other things:

> I am not certain if you are intending to represent Ms. Gregory only for the defense of our claims or if you are also advising her and representing her for the substantial claims she may bring against the insurance company under both breach of contract and errors and omissions . . . . This would mean of course . . . Ms. Gregory would recover damages against Allstate as well for bad faith handling of this claim . . . . [M]y clients are willing to settle the claim against Ms. Gregory [if, among other things,] Ms. Gregory will assign any and all claims that she has against Allstate and Mike Richmond, her agent, to my clients . . . ."

(Document No. 10, Ex. 3, p. 2).

A copy of this letter was sent directly to the Debtor. On December 5, 2017, after Ms. Meadows's settlement demand was not accepted, she filed a civil suit in the Circuit Court of Raleigh County, West Virginia against the Debtor, Richmond, and Allstate. Among other things, Ms. Meadows asserts causes of action there for spoliation of evidence against the Debtor, agent negligence against Richmond for failing to procure proper liability insurance coverage for the Debtor's business (for which Ms. Meadows was an alleged, intended, third-party beneficiary), and a cause of action against Richmond and Allstate for a reasonable expectation of insurance on behalf of the Debtor and Ms. Meadows.  To date, the Debtor has not filed any cross-claim against Richmond or Allstate based on their alleged bad faith, negligence, errors and omissions, or based on the Debtor's reasonable expectation of insurance.

Almost a year later, when the Debtor filed her November 30, 2018 Chapter 7 bankruptcy petition, the Debtor stated on her Schedule A/B that she did not have any unfiled legal or insurance claims against third parties.  On her Statement of Financial Affairs, she listed the pending lawsuit filed against her by Ms. Meadows.  However, the Debtor did not include Ms. Meadows as a creditor of her estate, did not include her on the Debtor's mailing list, and seemingly did not otherwise officially inform her about the Debtor's bankruptcy filing.

4

At a continued meeting of creditors on January 10, 2019, the Debtor plainly stated that she had no legal claims against anyone, for any reason, and that she accurately listed all her assets on her bankruptcy schedules. Regarding her belief that she had insurance coverage with Allstate and her potential claims arising out of that belief, the Debtor stated:

> A: . . . . And then I had an infant . . . pass away in my care and [I] was informed at the time that there was no home day care coverage. And then Allstate gave me the coverage to cover that claim . . . .
>
> Q: But you thought all along that you did have day care coverage?
>
> A: Yes, sir. Yes, sir, I did . . . . I explained to them I was a self-employed day care owner . . . .
>
> . . . .
>
> Q: . . . . [D]o you understand that because your insurance led you to believe that you had coverage, and then at the point you got sued, denied that coverage - - do you understand you can sue your insurance for that?
>
> A: I guess I could if I wanted to . . . . I didn't file suit against Allstate . . . I didn't even think of it as being an asset . . . . I'm not in the business of suing people. I don't know anything about that.

(Document No. 32-9, p. 11-12, 15, 25-27).

On January 24, 2019, the Trustee reported that assets existed in the Debtor's bankruptcy estate and requested that the Clerk of Court issue a notice to creditors to file claims. Then on January 28, 2019, the Debtor amended her Schedule A/B to list a possible claim for bad faith. Notwithstanding the fact that Ms. Meadows was not listed on the case's mailing list (and was therefore not notified by the Clerk of the proof of claim bar date) she timely filed a proof of claim for $7 million on February 28, 2019.

Subsequently, at a 2004 examination conducted by the United States Trustee, the Debtor again explained why she did not originally list the potential claims against Richmond and Allstate in her bankruptcy schedules:

> Q: [Y]our initial schedules did not include as a potential asset any sort of claim against Allstate . . . or any other insurance company. Is that correct?
>
> A: The only – the only claim that I did list on my papers was where I was being sued. . . . For that claim. I didn't know that I was supposed to list anything else.
>
> . . . .
>
> Q: . . . . When you filled out the initial schedules, did you believe that you had a claim potentially against Allstate for denial of insurance coverage?

> A: No, sir . . . I mean, I don't understand why I would have sued Allstate. I did believe that I had the insurance coverage. And then when this incident came about and a claim was filed, and a year later after the incident occurred, and they provided me with coverage, I just – they provided me with coverage. I just don't understand why I would sue them.

(Document No. 10, Ex. 1, p. 22-23).

### III. DISCUSSION

Ms. Meadows asserts that the court should deny entry of the Debtor's discharge on the grounds that: (1) the debtor knowingly failed to disclose a legal claim on her bankruptcy schedules with the intent to defraud her creditors, (2) the Debtor intentionally concealed her potential legal claims from the Trustee and her creditors, (3) the Debtor intentionally destroyed evidence regarding her property or financial condition, (4) the Debtor's alleged failure to list her potential claims against Richmond and Allstate are the equivalent of a failure to explain the loss or deficiency of assets, and (5) the Debtor owes Ms. Meadows a debt arising out of an intentional tort, or willful and reckless misconduct, that caused the death of an infant child.

**Count I – False Oath: 11 U.S.C. § 727(a)(4)(A)**

Ms. Meadows asserts that no genuine issue of material facts exists that the Debtor had pre-petition knowledge of her causes of action against Richmond and Allstate, and that her failure to schedule those causes of action was done knowingly and fraudulently.

Section 727(a)(4)(A) provides:

> (a) The court shall grant the debtor a discharge, unless
> . . .
> (4) the debtor knowingly and fraudulently, in or in connection with the case
> (A) made a false oath or account . . . .

§ 727(a)(4)(A).

"[T]o deny a debtor discharge under this section, a plaintiff must prove by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000); *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987).

6

Bankruptcy relies heavily on self-reporting by debtors. A debtor's signature avowing to the truth and correctness of the bankruptcy petition, schedules of assets and liabilities, and statement of financial affairs is undertaken on penalty of perjury. Fed. R. Bankr. P. 1008 ("All petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746."). Truth in reporting is consonant with the purposes of bankruptcy, one of which is to "give[] the honest but unfortunate debtor . . . a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934). A debtor should make every attempt to report accurate information in the debtor's petition and schedules and "[n]either the trustee nor the creditors should be required to engage in a laborious tug of war to drag the simple truth into the glare of daylight." *Tully*, 818 F.2d 106, 110 (9th Cir. 1987); *see also In re Ingle*, 70 B.R. 979, 983 (Bankr. E.D.N.C. 1987) ("Creditors are entitled to truthful statements in a debtor's statement of financial affairs so that they may conduct their own investigations of those affairs.").

In proving a cause of action under § 727(a)(4)(A), no requirement exists that there be some detriment to a creditor resulting from the false oath. *Farmers Co Operative Ass'n v. Strunk*, 671 F.2d 391, 396 (10th Cir.1982); *United States v. O'Donnell*, 539 F.2d 1233, 1237 38 (9th Cir. 1976). The fact that a debtor may believe that omitted information concerned a worthless business relationship or interest is a specious defense; "[i]t makes no difference that he does not intend to injure his creditors when he makes a false statement [because c]reditors are entitled to judge for themselves what will benefit, and what will prejudice, them." *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984). An intent to deceive may be found "where the debtor, in the first instance of filing a petition, Schedules, and Statement of Financial Affairs, makes statements therein, exceeding honest mistake, which are inconsistent and incompatible with her own knowledge and information." *Kaler v. McLaren (In re McLaren)*, 236 B.R. 882, 885 (Bankr. N.D. 1999). Items that are disclosed on a debtor's schedules may be more fully explained at the debtor's meeting of creditors. *E.g.*, *Sheehan v. Stout (In re Stout)*, 348 B.R. 61 (Bankr. N.D.W. Va. 2006) (holding that even though the debtor listed an asset incorrectly as being jointly owned, the debtor's statements at the meeting of creditors concerning the debtor's ownership rights were indicative of the debtor's lack of fraudulent intent when preparing the debtor's schedules).

Here, it is uncontroverted that the Debtor made a statement under oath that she had no legal claim against either Richmond or Allstate when she prepared her original bankruptcy schedules. There is, however, conflicting evidence on whether the Debtor knew the statement to be false which precludes entry of summary judgment in favor of either party. On one hand, the attorney for Ms. Meadows plainly detailed his theory regarding the Debtor's potential causes of action against Allstate and Richmond in his November 22, 2017 correspondence that was directly copied to the Debtor. The letter specifically stated that the Debtor had "substantial claims against the insurance company under both breach of contract and errors and omissions [and she could] recover damages against Allstate as well for bad faith handling of this claim." (Document No. 10, Ex. 3, p. 2). Ms. Meadows's attorney even offered to settle the Debtor's liability on the lawsuit if the Debtor would assign her existing claims against Richmond and Allstate to Ms. Meadows. The statements in the letter were followed by Ms. Meadows filing of a state court complaint that alleges, among other things, that the Debtor reasonably relied on Richmond and Allstate to provide her with adequate insurance coverage for the Debtor's daycare business, and that Richmond and Allstate breached their duties to her. That complaint also states that the Debtor had a reasonable expectation of adequate insurance, which was not fully provided, and she could have obtained coverage exceeding the $100,000 that Allstate retroactively added to her homeowners' insurance policy. These were statements provided to the Debtor from an opposing attorney, plainly showing that the plaintiff's attorney suing the Debtor in a state court lawsuit believed the Debtor had substantial claims against Richmond and Allstate. Then, when the Debtor filed her bankruptcy petition, even though she listed the pending lawsuit on her Statement of Financial Affairs, the Debtor did not include Ms. Meadows as a creditor on her Schedule E/F, and failed to include Ms. Meadows on her mailing list such that Ms. Meadows would receive notice of her bankruptcy filing.[2] The failure to schedule Ms. Meadows as a creditor, especially when the Debtor was a

---

[2] In a Chapter 7 case, a creditor has 60 days from the date first set for the meeting of creditors to file a complaint objecting to discharge of a debtor. Fed. R. Bankr. P. 4004(a). Only in very limited circumstances may this deadline be extended. Fed. R. Bankr. P. 4004(b)(1-2). Sometimes, debtors have a fraudulent incentive to add creditors to a bankruptcy case after the meeting of creditors is issued (which affirmatively informs creditors about the filing of the case and the deadline for objecting to discharge) in an effort to prevent the timely filing of a complaint objecting to a debtor's discharge. *See, e.g.*, *In re Hall*, 128 B.R. 175 (Bankr. S.D. Tex. 1990) ("[By failing] to list Thomas as a (disputed) creditor and/or by failing to add him to the notice list, which he had a duty to do, the Debtor effectively concealed from Thomas . . . the fact of the bankruptcy filing

defendant in a lawsuit filed by her that could result in substantial judgment against the Debtor, is unexplained.

On the other hand, Ms. Meadows's third-party claims against Richmond and Allstate were subject to a motion to dismiss in state court. The presiding judge did not grant or deny the motion to dismiss; rather, he allowed discovery to continue and determined that he would consider the matter again under the standards for adjudicating a motion for summary judgment. Importantly, no cross claims were filed by the Debtor's attorney against Richmond or Allstate in the state court proceedings. Moreover, while the Debtor agreed that she believed she purchased the required business liability insurance from Richmond and Allstate, Allstate also retroactively gave her liability insurance coverage during the period of M.M.'s death. As the Debtor testified at her Rule 2004 examination, "I don't understand why I would have sued Allstate . . . . they provided me with coverage, I just – they provided me with coverage. I just don't understand why I would sue them." (Document No. 10, Ex. 1, p. 22-23). In addition, the Debtor, who does not work in the legal field, did include a reference to the state court proceeding against her in her Statement of Financial Affairs. At her meeting of creditors, her Chapter 7 trustee examined her about the lawsuit, as did Ms. Meadows's attorney. Because of that discussion, the Debtor subsequently amended her Schedule A/B to include a potential bad faith litigation claim. As stated in *Stout*, 348 B.R. at 66, even though a debtor may list an asset incorrectly on the debtor's original schedules, expounding on the asset at the meeting of creditors is indicative of a debtor's lack of fraudulent intent when preparing the original schedules.

On summary judgment, however, the court's job is not to weigh the evidence, but determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 252. In this case there is, at a minimum, a genuine issue of material fact regarding whether the Debtor knew her statement that she owned no legal claim against Richmond or Allstate was false, and whether she omitted the potential asset with fraudulent intent. Because there is conflicting factual evidence on these issues, the court cannot enter a judgment on Count I of the adversary complaint.

---

and thus the need to assert . . . [a] cause of action (1) in another court and (2) within a narrow period of time."). In this case, the date first set for the meeting of creditors was December 27, 2018; Ms. Meadows was not added as a creditor in the case until after she filed her February 28, 2019 proof of claim.

**Count II – Concealment: 11 U.S.C. § 727(a)(2)(A)**

Ms. Meadows asserts that when the Debtor failed to disclose her legal claims against Richmond and Allstate on her original bankruptcy schedules, she attempted to conceal property from her creditors.

Section 727(a)(2)(A) directs courts to grant a debtor a discharge unless:

(2) the debtor, with intent to hinder, delay, or defraud a creditor . . . has . . . concealed—
    (A) property of the debtor, within one year before the date of the filing of the petition.

*Id.*

To prevail on a § 727(a)(2)(A) cause of action based on concealment, the moving party must generally prove five elements: (1) the debtor (2) concealed (3) the debtor's property, (4) with the intent to hinder, delay, or defraud a creditor (5) within one year of bankruptcy. *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002), *aff'd*, 540 U.S. 443 (2004). As § 727(a)(2)(A) itself states, the concealment of property must take place before a bankruptcy petition is filed.

In this case, there is no factual allegation that the Debtor concealed her potential litigation claims in the year before she filed bankruptcy. In fact, there is no allegation that the Debtor ever undertook any act with regard to her potential claims, much less an act to conceal them. *E.g.*, *Shoemaker v. United States Tr. for Region 16 (In re Shoemaker)*, B.A.P. No. CC-18-1020, 2019 Bankr. LEXIS 1966 at *31-32 (B.A.P. 9th Cir. June 20, 2019) ("[A]though the record supports an inference that Mr. Shoemaker was aware of the Litigation Claims at the time of his filing, there is no evidence showing that Mr. Shoemaker attempted or intended to conceal the Litigation Claims one year prior to his bankruptcy filing as required under the plain language of § 727(a)(2)(A)."); *Mendelsohn v. Walczuk (In re Walczuk)*, No. 8-18-ap-08043, 2019 Bankr. LEXIS 1886 at *28-29 (Bankr. E.D.N.Y. June 21, 2019) ("[A] denial of discharge under § 727(a)(2)(A) cannot be based upon omissions from the debtor's schedules.").

Consequently, the court finds no factual support for Ms. Meadows's assertion that the Debtor concealed property from her creditors in the year before she filed her bankruptcy petition and will therefore dismiss Count II of Ms. Meadows's adversary complaint.

**Count III – Destruction of Property: 11 U.S.C. § 727(a)(3)**

Ms. Meadows asserts that following the death of M.M., the Debtor destroyed, or failed to keep and preserve property, from which the Debtor's financial condition might be ascertained.

More specifically, Ms. Meadows complains that the Debtor destroyed M.M.'s crib and bedding despite being served with a notice to preserve that property following his death. Additionally, her complaint includes allegations regarding certain telephone records and records regarding children and employees present at the time of M.M.'s death.[3]

Section 727(a)(3) provides:

(a) The court shall grant the debtor a discharge, unless—

. . . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case . . . .

*Id.*

As is apparent from its statutory requirement, the destruction, or failure to keep and preserve, must relate to recorded information from which a debtor's financial condition or business transactions can be ascertained. In adjudicating causes of action under § 727(a)(3), courts generally consider a variety of different financial records, such as ledgers, bank records, cancelled checks, deposit slips, credit card usage, the filing of income tax returns, store inventories, insurance, and other financial records kept in the ordinary course of a business activity. *See generally*, James Buchwalter, *What Constitutes Concealment, Destruction, Mutilation, Falsification, or Failure to Keep or Preserve Recorded Information from Which Debtor's Financial Condition or Business Transactions Might Be Ascertained for Purposes of Denying Discharge in Bankruptcy Under 11 U.S.C.A. § 727(a)(3), or Predecessor Statutes*, 31 A.L.R. Fed. 2d 29 [2] (2019).

Here, M.M.'s crib and bedding are physical items of personal property that Ms. Meadows wished to use in establishing the Debtor's liability in her pre-petition state court action. These physical items are not within the scope of recorded information – such as books, documents,

---

[3] In paragraph 15 of Ms. Meadows's complaint, she references a written notice she provided to the Debtor advising her of her obligation to preserve certain evidence. That notice, which Ms. Meadows attached as Exhibit 8 to her motion for summary judgment, includes a request to preserve the records identified. According to the court's review of the record, the Debtor supplied those records in discovery such that only the crib and bedding are part of Ms. Meadows's complaint under § 727(a)(3).

11

records, and papers – from which the Debtors' financial condition or business transactions might be ascertained.

Consequently, the court will dismiss Count III of the adversary complaint.

**Count IV – Sufficiency of Assets to Pay Claims: 11 U.S.C. § 727(a)(5)**

Ms. Meadows contends that if the Debtor pursues her legal claims against Richmond and Allstate, she will have sufficient assets to satisfy all claims against her bankruptcy estate. Because the Debtor has not pursued those claims, Ms. Meadows argues, she has failed to satisfactorily explain why her assets are not sufficient to meet her liabilities.

Section 727(a)(5) provides:

(a) The court shall grant the debtor a discharge, unless –
. . . .
(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities . . . .

§ 727(a)(5).

A cause of action under § 727(a)(5) requires the plaintiff to establish that: "(1) the debtor at one time possessed or claimed to control substantial and identifiable assets; (2) those assets have disappeared . . . and (3) no plausible explanation for this deficiency is apparent from the submitted records or has been articulated by the debtor." *Agai v. Mihalatos (In re Mihalatos)*, 527 B.R. 55, 69 (Bankr. E.D.N.Y. 2015); *see also Quality Car & Truck Leasing, Inc. v. Adkins (In re Adkins)*, 578 B.R. 382, 392 (Bankr. S.D.W. Va. 2017) (enumerating standards for a cause of action under § 727(a)(5)).

In this case, Ms. Meadows's adversary complaint fails to meet an essential element of a cause of action under § 727(a)(5); namely, Ms. Meadows has not established that the assets – the Debtor's alleged pre-petition claims against Richmond and Allstate – have been lost. To the contrary, the Debtor's Chapter 7 Trustee has notified creditors that the Debtor's case has assets to administer and the Chapter 7 trustee has filed an application to employ Ms. Meadows's attorney to pursue causes of action belonging to the Debtor's bankruptcy estate against Richmond and Meadows.

Because Ms. Meadows has not established the disappearance of a pre-petition asset of the Debtor, the court will dismiss Count IV of her adversary complaint.

**Count V: Claim for Willful or Reckless Misconduct Causing Death: 11 U.S.C. § 727(a)(12)[4]**

Ms. Meadows asserts that her pre-petition state court lawsuit against the Debtor is an action in which the Debtor may be found liable for damages as a result of the willful, intentional or reckless misconduct of the Debtor, which caused the wrongful death of M.M.

Section 727(a)(12) provides:

(a) The court shall grant the debtor a discharge, unless –
. . . .
(12) the court . . . finds that there is reasonable cause to believe that—

(A) section 522(q)(1) may be applicable to the debtor; and

(B) there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B).

§ 727(a)(12).

This provision is intended to accompany § 522(q) of the Bankruptcy Code, which is a limitation on a debtor's homestead exemption, and § 727(a)(12)'s purpose is to delay entry of discharge while it is determined whether a debtor's homestead exemption should be limited. *See* 6 *Collier on Bankruptcy* ¶ 727.14 (2019) ("It appears that section 727(a)(12) would only come into play when the applicability of section 522(q) is in doubt."). The plain language of § 727(a)(12) requires both a finding that § 522(q)(1) may be applicable to the debtor, and that a pending proceedings exists whereby the debtor may be found guilty of certain felonies, or liable on debts of the kind described in § 522(q)(1)(B). *E.g.*, *Meer v. Lilly (In re Lilly)*, Adv. Proc. No. 12-6034, 2012 Bankr. LEXIS 5817 at *20 (Bankr. D. Id. 2012) (noting that the criteria are conjunctive, not disjunctive). In turn, § 522(q)(1) provides:

(1) As a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of an interest in property described in subparagraphs (A), (B), (C), and (D) of subsection (p)(1) which exceeds in the aggregate $170,350 if—

(A) the court determines, after notice and a hearing, that the debtor has been convicted of a felony . . . or

---

[4] Ms. Meadows refers to § 727(a)(5) of the Bankruptcy Code as the statutory authority for this cause of action in her adversary complaint. The contents of the allegations however plainly refer to § 727(a)(12) – not (a)(5) – and the statutory reference to § (a)(5) is a typographical error.

> (B) the debtor owes a debt arising from . . . (iv) any criminal act, intentional tort, or willful or reckless misconduct that caused serious physical injury or death to another individual in the preceding 5 years.

§ 522(q)(1).

In this case, the Debtor did not claim to own any real property on her Schedule A/B and no attempt was made to claim an exemption greater than $170,350. Consequently, there is no basis for applying § 727(a)(12) to his case and the court will dismiss Count V of the adversary complaint.

## IV. CONCLUSION

Under 11 U.S.C. § 727(a)(4)(A), the court finds that genuine issues of material facts exists regarding whether the Debtor knowingly and fraudulently made a false oath or account in connection with the filing of her bankruptcy petition. The court will enter a separate order dismissing Counts II, II, IV, and V of Ms. Meadows's adversary complaint.