Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SUSAN ROCHELLE GREGORY, | ) | Case No. 18-bk-50243 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| ———————————— | ) | |
| | ) | |
| MARVETTA JILL MEADOWS, as | ) | |
| ADMINISTRATRIX OF THE ESTATE | ) | |
| OF M.M., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 19-ap-5002 |
| | ) | |
| SUSAN ROCHELLE GREGORY, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————— | ) | |

## MEMORANDUM OPINION

On May 1, 2019, Marvetta Jill Meadows, as Administratrix of the Estate of M.M. ("Ms. Meadows"), by counsel, issued subpoenas to attorneys and law firms representing defendants in pre-petition state court litigation.[1]  The subpoenas are in furtherance of Ms. Meadows's adversary complaint to deny entry of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(A), which

---

[1] Ms. Meadows issued subpoenas to: (1) Steele Law Offices and Thomas Steele (collectively, "Steele"), the representative of Susan Rochelle Gregory (the "Debtor"), who is a defendant in a pre-petition wrongful death action brought by Ms. Meadows; (2) Kesner & Kesner, PLLC, and Brent Kesner (collectively "Kesner") the representatives of Allstate Property & Casualty Inc., Co. ("Allstate"), the Debtor's pre-petition insurance company; and (3) Reminger Co., LPA, and Stephen W. Walters (collectively "Reminger"), the representative of Michael Richmond and Richmond Insurance Center, Inc. (collectively "Richmond"), the Debtor's pre-petition Allstate insurance agent.

1

alleges that the Debtor knew she had pre-petition claims against her co-defendant insurance agent and insurance company, but intentionally and fraudulently failed to disclose those potential litigation claims on her original bankruptcy schedules.

Steele, Kesner, and Reminger, the legal representatives of the Debtor, Allstate, and Richmond, object to the subpoenas arguing, among other things, that the documents requested are not relevant to Ms. Meadows's action to deny entry of the Debtor's discharge and the requested information is protected from disclosure by an applicable privilege.

For the reasons stated herein, the court will quash the subpoenas issued to Kesner and Reminger, and will schedule Steele's motion to quash for further proceedings.

## I. BACKGROUND

Before filing her Chapter 7 bankruptcy petition, the Debtor operated Happy Jack's Family Daycare as a sole proprietorship out of her home. As a licensed daycare operator, the Debtor was required to maintain proper insurance for her business. Before December 7, 2015, as asserted by the Debtor, she met with Richmond to discuss her business liability insurance, and Richmond allegedly made statements or undertook actions that led the Debtor to believe that she had proper insurance coverage. Unknown to the Debtor, her then-existing policy excluded liability coverage for her daycare business.

In 2015, Ms. Meadows retained the Debtor's daycare services to care for her infant son, M.M. On December 7, 2015, while in the Debtor's care, M.M. rolled onto his stomach and died from asphyxiation or other related causes.  Allstate informed the Debtor that she was not covered for losses associated with M.M.'s death because she had not obtained the proper business liability insurance. Notwithstanding its assertion that the Debtor lacked proper coverage, Allstate amended the Debtor's policy, retroactively, to include $100,000 in coverage and offered to pay that amount to Ms. Meadows. Allstate also retained Steele to defend the Debtor in the state court wrongful death action brought by Ms. Meadows.

 On November 22, 2017, Ms. Meadows made her own settlement demand to the Debtor's attorney, Steele, stating, among other things:

> I am not certain if you are intending to represent Ms. Gregory only for the defense of our claims or if you are also advising her and representing her for the substantial claims she may bring against the insurance company under both breach of contract and errors and omissions. . . . This would mean of course . . . Ms. Gregory would recover damages against Allstate as well for bad faith handling of this claim . . . . [M]y clients are willing to settle the claim against Ms. Gregory [if, among other

2

things,] Ms. Gregory will assign any and all claims that she has against Allstate and
Mike Richmond, her agent, to my clients . . . ."

(Document No. 10, Ex. 3, p. 2).

A copy of this letter was sent directly to the Debtor. On December 5, 2017, after Ms.
Meadows's settlement demand was not accepted, she filed a civil suit in the Circuit Court of
Raleigh County, West Virginia against the Debtor, Richmond, and Allstate. Among other things,
Ms. Meadows asserted causes of action for agent negligence against Richmond for failing to
procure proper liability insurance coverage for the Debtor's business (for which Ms. Meadows
was an alleged, intended, third-party beneficiary), and a cause of action against Richmond and
Allstate for a reasonable expectation of insurance on behalf of the Debtor. In the state court
proceeding, to date, the Debtor has not filed any cross-claim against Richmond or Allstate based
on their alleged bad faith, negligence, errors and omissions, or based on the Debtor's reasonable
expectation of insurance even though Ms. Meadows believes that the Debtor has viable first party
causes of action against Richmond and Allstate. If the Debtor were successful on her potential first
party causes of action, Ms. Meadows believes that she could obtain a greater compensation from
the Debtor's insurance company than the $100,000 it offered to her.

Almost a year later, when the Debtor filed her November 30, 2018 Chapter 7 bankruptcy
petition, the Debtor stated on Schedule A/B that she did not have any unfiled legal or insurance
claims against third parties.  On her Statement of Financial Affairs, she did list the pending lawsuit
against her filed by Ms. Meadows; however, she did not include Ms. Meadows as a creditor, did
not include her on the Debtor's original mailing list, and seemingly did not otherwise officially
inform her about the Debtor's bankruptcy filing.

Subsequently, at a 2004 examination conducted by the United States Trustee, the Debtor
explained why she did not originally list the potential claims against Richmond and Allstate in her
bankruptcy schedules:

Q: [Y]our initial schedules did not include as a potential asset any sort of claim
against Allstate . . . or any other insurance company. Is that correct?

A: The only – the only claim that I did list on my papers was where I was being
sued. . . . For that claim. I didn't know that I was supposed to list anything else.

Q: . . .  And then subsequently, you have filed an amendment that lists as an
unknown . . . . potential asset a claim against Allstate for insurance purposes. What
made you decide to amend your schedules in that regard?

3

A: Based on the advice of my [bankruptcy] attorney.

Q: . . . . When you filled out the initial schedules, did you believe that you had a claim potentially against Allstate for denial of insurance coverage?

A: No, sir . . . I mean, I don't understand why I would have sued Allstate. I did believe that I had the insurance coverage. And then when this incident came about and a claim was filed, and a year later after the incident occurred, and they provided me with coverage, I just – they provided me with coverage. I just don't understand why I would sue them.

(Document No. 10, Ex. 1, p. 22-23).

On February 25, 2019, Ms. Meadows filed a five-count adversary complaint to deny the Debtor a discharge. On May 1, 2019, Ms. Meadows issued her subpoenas to Steele, Kessler, and Reminger requesting the turnover of twelve different categories of documents. On December 16, 2019, the court entered its opinion granting summary judgment and dismissing Counts II-V of the complaint, but the court did not dismiss Count I, which states a cause of action under 11 U.S.C. § 727(A)(4)(A). In denying summary judgment on Count I, the court noted conflicting evidence regarding the Debtor's knowledge of her pre-petition claims, the adjudication of which would require the court to weigh the evidence in contravention of the standard of review on summary judgment.

## II. DISCUSSION

Ms. Meadows seeks to obtain all communications between Steele and the Debtor, and between Steele, Kesner, and Reminger, relating to any pre-petition claim that the Debtor could bring against Richmond and Allstate, and all communications related to the Debtor's bankruptcy filing. Ms. Meadows wants to use this information to prove that the Debtor knew she had causes of action against Richmond and Allstate before she filed bankruptcy, but knowingly and fraudulently failed to disclose those causes of action on her original bankruptcy schedules.

Steele, Kesner, and Reminger, on behalf of the Debtor, Allstate, and Richmond, respectively, object to the disclosure of responsive documents arguing, among other things, that the requested documents are not relevant or are protected by the attorney-client, work product, or common interest privilege against disclosure.

4

## A. Relevancy

Steele, Kesner, and Reminger assert that much of the information requested in Ms. Meadows's subpoena is not relevant to her adversary proceeding to deny the Debtor a discharge under 11 U.S.C. § 727(a)(4)(A). In fact, Ms. Meadows issued the subpoenas to these parties on May 1, 2019; subsequently, the court entered an order dismissing Counts II-V of Ms. Meadows's adversary complaint. The only remining cause of action is one to deny the Debtor a discharge pursuant to 11 U.S.C. § 727(a)(4)(A), which is based on the allegation that the Debtor knowingly and fraudulently made a false oath or account by failing to list potential litigation claims against Richmond and Allstate when she filed her November 30, 2018 Chapter 7 bankruptcy petition.

Fed. R. Bankr. P. 7026, which makes Fed. R. Civ. P. 26 applicable to bankruptcy proceedings, provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim of defense and proportional to the needs of the case . . . .

Fed. R. Civ. P. 26(b). *See Tucker v. Momentive Performance Materials USA, Inc.*, No. 2:13-cv-04480, 2016 U.S. Dist. LEXIS 187413 at *8 (S.D.W. Va. Nov. 23, 2016) ("While Rule 26 does not defined what is deemed relevant for purposes of the rule, relevance has been 'broadly construed to encompass any possibility that the information sought may be relevant to the claim of defense of a party.'"); Fed. R. Evid. 401 (stating that relevant evidence is: (a) that which "has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."); 6 *Moore's Federal Practice – Civil*, § 26.44[2] (2019) ("Pretrial discovery is not, however, limited to a search for 'evidence' [because i]t encompasses the uncovering of information that will assist in defining or clarifying the issues in the case or that will illuminate issues upon which a trial court must pass in administering or deciding the case.").

### 1. Relevancy of Document Requests Made to Steele

Based on the court's previous ruling on summary judgment, and based on the standard of relevancy as stated in Rule 26(b), the only relevant information requested by Ms. Meadows's subpoena regarding documents in Steele's possession is that which bears upon the Debtor's knowledge of her potential, pre-petition litigation claims against Richmond and Allstate, and any item which bears upon the Debtor's motive for failing to disclose any known claim on her original bankruptcy schedules. Of course, Ms. Meadows's subpoena was issued before the court's ruling on summary judgment. Consequently, the court finds only the following categories of document

requests made to Steele to be relevant to Ms. Meadows's cause of action under § 727(a)(4)(A) of the Bankruptcy Code:

> 1. Any and all communications between . . . Steele . . . and Susan Gregory relating to any potential claim(s) that Susan Gregory could advance against . . . Richmond . . . and Allstate . . . .
>
> 2. Any and all communications between Steele and Susan Gregory related to coverage or the absence of coverage for Susan Gregory and Happy Jack's Family Daycare;
>
> 3. Any and all communications between Steele and Susan Gregory related to the errors and omissions coverage of . . . Richmond . . . .
> . . . .
> 5. Any and all communications between Steele and Susan Gregory related to any offer of settlement presented to Steele and/or Susan Gregory;
>
> 6. Any and all communications between Steele and Susan Gregory relating to the decision of Susan Gregory to file for Chapter 7 Bankruptcy;

(Document No. 13-1).

Item 4 relates to communications between Steele and the Debtor regarding a notice to preserve evidence that Ms. Meadows's attorney served on the Debtor shortly after the death of M.M. Item 4 was specifically connected to Count III of Ms. Meadows' adversary complaint, in which Ms. Meadows asserted that the Debtor's destruction of M.M.'s bed and crib was akin to a failure to preserve financial records under 11 U.S.C. § 727(a)(3). Importantly, the Debtor stated that she excised M.M.'s crib and bedding about 6 months after his death. At the time the Debtor excised these items, Steele had not been retained to represent the Debtor in Ms. Meadow's wrongful death claim. Moreover, the court dismissed Count III on summary judgment, and consequently, Item 4 is not relevant to Ms. Meadows's cause of action under § 727(a)(4)(A) of the Bankruptcy Code.

### 2. Relevancy of Document Requests Made to Kesner and Reminger

Items 7-12 request documents from Kesner and Reminger, counsel to Allstate and Richmond, insofar as Kesner and Reminger had communications with Steele. Items 7-12 seek the same categories of information that Items 1-6 sought from Steele.[2] Kesner and Reminger object to the relevancy of the requested items stating that they are not the Debtor's agents, do not

---

[2] For the same reason the court finds Item 4 to be irrelevant, the court finds Item 10 to be irrelevant.

communicate directly with the Debtor, and no communication between themselves or Steele has any bearing on the Debtor's knowledge of her alleged pre-petition claims against them or her alleged intent to fraudulently omit the potential legal claims from her original bankruptcy schedules.

In response, Ms. Meadows asserts that she believes Kesner's and Reminger's communications to Steele are relevant to show why Allstate retroactively afforded the Debtor liability coverage and why it chose $100,000 instead of some other limit.  She also asserts that the method by which Allstate communicated to the Debtor may help demonstrate the Debtor's level of understanding regarding her potential claims against Richmond and Allstate. In addition, Ms. Meadows asserts that communications between Kesner, Reminger and Steele are relevant because, in her view, the communications may establish a scheme to defraud. More specifically, Ms. Meadows claims that Steele, Kesner, and/or Remington may have attempted to shield themselves from liability on her claims, which may exceed the $100,000 limit of Allstate's retroactively placed insurance, by doing the following: misleading the Debtor into believing that she was adequately insured by Allstate as a means of dissuading her from advancing claims against Richmond and Allstate; persuading her to file bankruptcy to remove her personal liability on Ms. Meadows's claim; and encouraging her to not include in her filing the potential causes of action against them disclosed to her creditors or her Chapter 7 trustee.

Importantly, communications from Kesner or Reminger to Steele are communication to an agent of the Debtor and not to the Debtor, personally. When the action is one to deny entry of a discharge, this is an important distinction bcause a denial of discharge is "a drastic remedy reserved only for the worst actors*." Korrub v. Cohn (In re Cohn)*, 561 B.R. 476, 487 (Bankr. N.D. Ill. 2016).

Under § 727(a)(4)(A) of the Bankruptcy Code, a debtor may be denied entry of a discharge if the debtor "knowingly and fraudulently, in or in connection with a case – (A) made a false oath or account."  This specific language focuses on a debtor's knowledge and fraudulent intent – not on the knowledge or fraudulent intent of an agent of a debtor. Discharge provisions "must be construed strictly against those who object to a debtor's discharge and 'liberally in favor of the bankrupt.'" *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300 (2d Cir. 1996); *see Quality Car & Truck Leasing, Inc. v. Adkins (In re Adkins)*, 578 B.R. 382, 390 (Bankr. S.D. W. Va. 2017) (same). When imputing the knowledge of an agent to be knowledge on behalf of a debtor in bankruptcy, a distinction must be made between the "effect" of a discharge and the "right" to a

7

discharge. *Frank v. Michigan Paper Co.*, 179 F. 776, 779 (4th Cir. 1910). As stated by the Fourth Circuit in *Frank*, the right to a discharge is determined by the good faith of the bankrupt; it is not determined by the bad faith or misconduct of the debtor's partners or other authorized agents. *Id.* at 781. Accordingly, courts have determined that in a proceeding to deny entry of discharge, the acts of one party, such as a spouse or agent, will not be imputed to the other spouse or principal who personally lacked the fraudulent intent required by the statute. *E.g.*, *In re Bardwell*, 610 F.2d 228 (5th Cir. 1980) (finding that a spouse who signed a fraudulent financial statement after having "glanced at it briefly" and who relied on her attorney husband for the correctness of the statement, did not have the requisite, culpable intent necessary to support the denial of her discharge); *In re Lovich*, 117 F.2d 612, 615 (2d Cir. 1941) (noting the existence of several cases whereby the general principles of agency law did not apply in a denial of discharge proceeding and stating that "we believe that when a false statement is made by an agent, some additional facts must exist justifying an inference that the bankrupt knew of the statement and in some way acquiesced in it or failed to investigate its accuracy."); *First American Title Ins Co. v. Coven (In re Coven)*, No. 06-4323, 2007 U.S. Dist. LEXIS 28181 at *30 (D.N.J. April 17, 2007) (finding that the bankruptcy court did not error in refusing to impute the husband's fraudulent intent to his co-debtor spouse).

The cases cited above concern a debtor's "right" to a discharge, and those cases must be distinguished from cases that concern the "effect" of a discharge on a certain debt, such as provided in § 523(a) of the Bankruptcy Code, where the acts of an authorized agent may be imputed to a debtor. *See, e.g.*, *Deodati v. M.M. Winkler & Assoc., (In re M.M. Winkler & Assoc.)*, 239 F.3d 746, 751 (5th Cir. 2001) (holding that a partnership debt was excepted from discharge under § 523(a)(2)(A) of the Bankruptcy Code in the "innocent" partner's bankruptcy proceeding); *BancBoston Mort. Co. v. Ledford (In re Ledford)*, 970 F.2d 1556, 1561-62 (6th Cir. 1992) (stating that when an "innocent" partner shares in the benefit of the fraud, the debt should be excepted from discharge); *Walker v. Citizens State Bank (In re Walker)*, 726 F.2d 452, 454 (8th Cir. 1984) (holding that for a debt to excepted from discharge in a principal agent relationship, the principal must of know, or should have known, of the agent's fraud); *Sachan v. Huh (In re Huh)*, 506 B.R. 257, 271 (B.A.P. 9th Cir. 2013) (adopting a "knew or should have known" standard for imputing the fraud of an agent to a principal in an exception to discharge proceeding).

As relevant here, ¶ 26 and ¶ 30 of Ms. Meadows's Complaint state:

26. The Plaintiff was specifically aware of the legal claim that she had and continues to have against Allstate . . . and . . . Richmond . . . because Plaintiff's counsel attempted to negotiate a settlement of the underlying wrongful death claim of the Plaintiff that involved an assignment of those legal claims.

. . . .

30. The Defendant knowingly, intentionally, and fraudulently made a false oath when she failed to disclose her legal claims against Allstate . . . and . . . Richmond . . .

(Document No. 1).

The Complaint, like 11 U.S.C. § 727(a)(4)(A) itself, focuses on the knowledge of the Debtor regarding her potential pre-petition legal claims against Allstate and Richmond. Consequently, communications made by Kesner and Reminger to Steele are not relevant to the pertinent allegations in the complaint, or to § 727(a)(4)(A), unless Steele conveyed information from Kesner and Reminger directly to the Debtor, which, of course, is the subject of Items 1,2,3,5, and 6 of Ms. Meadows's subpoena to Steele.

Accordingly, the court that finds Items 7-12 do not relate to documents that are relevant in proving the allegations in Ms. Meadows's complaint. As such, the court will quash the subpoenas in that regard.

## B. Attorney Client and Work Product Privilege

Steele further objects to disclosing information relevant to requested items 1,2,3,5 and 6 of the subpoena asserting that these documents are protected by the attorney-client privilege and/or the work product privilege. Ms. Meadows recognizes that much of the information she has requested in her subpoena to Steele concerns matters that may ordinarily be protected by either of those privileges. However, she asserts that even if an applicable privilege exists, it was waived by the Debtor in her Rule 2004 exam when she allegedly raised the advice of counsel defense in asserting that she had no litigation claims against Richmond or Allstate.

In West Virginia, "'[i]n order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be identified to be confidential.'" Syllabus Pt. 2, *State ex rel. Allstate Ins. Co. v. Madden*, 215 W. Va. 705 (2004) (quoted authority omitted). An attorney-client privilege may be waived by the client. *E.g.*, *State ex rel. Med. Assur of W. Va., Inc., v. Recht*, 213 W. Va. 457, 469 (2003) (noting that information

within the scope of the attorney-client privilege is permanently protected unless the protection is waived by the client).

The advice of counsel exception to the attorney-client privilege applies when a party places an attorney's advice in issue in litigation and thereby waives the privilege with respect to all communications to and from counsel concerning the transaction for which counsel's advice was sought. *See, e.g.*, Syllabus Pt. 6, *State ex rel. Brison c. Kaufman*, 213 W. Va. 624 (2003) ("A party may waive the attorney-client privilege by asserting claims or defenses that puts his or her attorney's advice in issue."); *Bacchi v. Massachusetts Mut. Life Ins., Co.*, 110 F. Supp. 3d 270, 275 (D. Mass. 2015) (stating that the "classic example is where a defendant defends against a claim on the ground that it relied on the advice of counsel in performing or failing to perform the challenged conduct.").

The Debtor's Rule 2004 testimony, however, fails to establish that the Debtor was relying on the advice of counsel regarding her belief that she had no claim against either Richmond or Allstate:

> Q: In that letter . . . it indicates that Mr. Mize suggests to you that you might have a claim against your insurance company. Did you perceive that suggestion when you read the letter?
>
> A: No, sir. Honestly, I didn't. . . . I honestly just did not know, nor did I feel like I should sue Allstate. I was provided coverage.
>
> . . . .
>
> Q: . . . . When you got this letter, did you read through it completely or did you scan it and then just give it to your attorney?
>
> A: I would say that I looked through it and contacted Mr. Steele.
>
> . . . .
>
> Q: . . . [You could] recover damages against Allstate as well for their bad faith handling of this claim. This is all opinion, but you didn't read this and go ask for additional advice from anyone?
>
> A: No, sir. I just stuck with my attorney.

(Document No 32-2 pp. 25-26, 67, 69)

The court fails to see how this exchange with the Debtor establishes an advice of counsel defense. The Debtor testified that she received the settlement letter from Ms. Meadows that outlined her potential legal claims against Richmond and Allstate, did not read it closely, forwarded the letter to her attorney, and did not take further action. This exchange does not

establish that the Debtor was specifically informed by Steele regarding the existence or non-existence of such potential litigation claims. Steele was not the Debtor's bankruptcy counsel and did not complete her bankruptcy schedules. Moreover, the non-disclosure of a pre-petition claim by itself is not sufficient to waive the attorney-client privilege. *DeMassa, APC v. MacIntyre (In re MacIntyre)*, Case No. 95-55617, 1996 U.S. App. LEXIS 6518 at *15-16 (9th Cir. Mar. 6, 1996) (noting that the bankruptcy court was correct in finding that the debtor did not waive the attorney-client privilege by failing to schedule a pre-petition malpractice claim against the debtor's state court attorney).

Notably, the privilege of the Debtor to keep her legal communications with her attorney from disclosure is a right to belongs to the Debtor. Steele, as the Debtor's state court counsel, has asserted the attorney-client and work-product privileges on behalf of the Debtor in this proceeding. Of course, in this bankruptcy proceeding, the Debtor has bankruptcy counsel. At this time, before proceeding further with the adjudication of Steele's motion to quash, the court believes that the Debtor should be given an opportunity to consult with her bankruptcy counsel to discuss whether or not she should waive her attorney-client privilege and release her communications with Steele, if any, regarding the existence of her potential pre-petition claims against Richmond or Allstate and/or her decision to file a Chapter 7 bankruptcy petition. Consequently, the court will set Steele's motion to quash for a further hearing.

### III. CONCLUSION

Based upon the foregoing, the court will enter a separate order granting, in part, the motions to quash filed by Kesner and Reminger. The court will schedule further proceedings regarding Steele's motion.

11

12